GILCHRIST *v.* MYSTIC WORKERS OF THE WORLD.

1. INSURANCE — FRATERNAL BENEFIT ASSOCIATIONS — PROOFS OF DEATH—EVIDENCE—ACTIONS—CONDITIONS PRECEDENT.

In an action upon a fraternal benefit certificate in which a provision appeared for the filing of proofs of death to be passed upon by the board of directors before the beneficiary should be entitled to institute suit, defendant admitted that proofs of death were filed and plaintiff, relying upon the admission, did not offer any evidence as to the proofs which she had presented. Defendant had given no notice of special defense under Circuit Court Rule 7 (*d*) requiring notice of the claim that plaintiff failed to furnish proofs of loss as provided by the policy. *Held*, that the trial court did not err in overruling defendant's motion to instruct a verdict on the ground that sufficient proof of compliance with the conditions of the policy had not been offered.

2. SAME—EVIDENCE—HEARSAY—DEATH CERTIFICATES.

Upon the offer of the physician's certificate of death in evidence, an objection that the last sentence in the paper reading "Contributory; abortion said by deceased to have been performed by Dr. ........" was hearsay, and therefore inadmissible, was not well taken except as to the part following "abortion." The words "contributory" and "abortion" were competent evidence; appearing from the context to have been within the knowledge of the physician; and the certificate was admissible.

3. EVIDENCE—CORONER'S VERDICT.

Where plaintiff furnished to the insurer, a benefit association, verified proofs of death and defendant requested him to forward a copy of the coroner's verdict, which he procured and forwarded, but not as part of the proofs, the contents were not an admission on his part, and were rightly excluded.

4. SAME—PRIVILEGE—PHYSICIAN AND PATIENT—INSURANCE.

Notwithstanding a written waiver of the statutory privilege contained in a decedent's application for insurance, the opinions and testimony of her attending physicians based on facts learned' while they were in attendance as pro-

fessional advisers was not admissible: the clause contained in the application was void as a waiver under Act No. 234, Pub. Acts 1909, which creates the only exception permitted by law to the general privilege prevailing as to physician and patient, and limits the right of waiver to the heirs-at-law of decedent in a will contest.

5. SAME—PRIVILEGE—WAIVER—RES GESTÆ.

Statements made by decedent, as to the cause of her death, tending to show a breach of certain conditions of the policy, made in the presence of the attending physicians and nurse were not admissible as part of the *res gestæ*, though the admission to the nurse was competent, and should not have been treated as privileged.

6. SAME—EXPERT TESTIMONY.

Testimony tending to establish a breach of the benefit certificate, in that insured had submitted to an abortion, was sufficient to require the case to go to the jury, and, if believed, to warrant a verdict for defendant.

Error to Mecosta; Barton, J. Submitted October 4, 1914. (Docket No. 94.) Decided October 29, 1915. Rehearing denied April 21, 1916.

Assumpsit by William H. Gilchrist against the Mystic Workers of the World upon a benefit certificate. Judgment for plaintiff, on a directed verdict. Defendant brings error. Reversed.

*Butler & Everett* and *Charles E. Sturtz,* for appellant.

*Albert B. Cogger* and *Broomfield & Worcester,* for appellee.

OSTRANDER, J. The facts in the case, stated briefly, are as follows: Defendant, a fraternal beneficiary insurance corporation, of the State of Illinois, doing business within this State, issued the benefit certificate in question November 8, 1912, to Grace P. Gilchrist, a member of the order. Plaintiff, her husband, was named as beneficiary in said certificate. This certifi-

cate was issued upon a written application signed by Grace P. Gilchrist, dated October 18, 1911. She died May 29, 1913. Later, proof of her death was duly filed with the proper officers of defendant corporation, and, payment having been refused, this suit was brought. Defendant, under the plea of the general issue, gave notice of certain matters of defense, to which such reference as may be necessary will be given. On the trial, at the close of plaintiff's case, a motion made by the defendant for a directed verdict in its favor was denied. Defendant then proceeded with its defense, and when it rested counsel for plaintiff made a like motion for an instructed verdict. This motion was granted.

It was admitted by defendant upon the trial that the certificate in question was issued; that plaintiff was the beneficiary named in it; that the deceased wife at the time of her death was a member of the order in good standing; that proofs of death and claim of benefit were filed in due time and were passed upon by the proper officers; that the claim was not paid, and suit was afterwards brought. Counsel for both parties reserved the right to object to any exhibits offered on the ground of materiality, competency, or relevancy. Plaintiff offered the beneficiary certificate sued upon in evidence and desired to read it into the record. Counsel for defendant objected to admitting the certificate in evidence unless there was put in evidence with it, as a part of it, the application, medical examination, and warranties contained therein, and also certain sections of the constitution and by-laws of the order, insisting that the plaintiff must introduce the entire contract, and not a part of it; that by the certificate all of these documents were made a part of the contract. Plaintiff insisted that the suit was based on the certificate, and the other papers were not a part of his case. After some colloquy between court and

counsel these papers, which were in the possession of the defendant, were produced and given to plaintiff's counsel and handed to the court by him, with the remark that they were to be received in evidence and considered only in the light of the defendant's notice under the plea in the case, and could only be used to support the notice under the plea. Counsel for plaintiff also offered the proof of death, which was objected to and withdrawn on account of the admission already made by defendant's counsel that the proofs of death were filed within the time provided by the by-laws. Plaintiff then called the mother of Mrs. Gilchrist, deceased, and made proof that she died in the hospital May 29, 1913, and then rested his case. Defendant then made the motion for a directed verdict already mentioned, on the ground that plaintiff had put in no evidence as to the kind or character of death proofs which were submitted to the grand lodge, required by the insurance certificate, as follows:

"(5) No action can or shall be maintained on this certificate until after the proofs of death and the claimant's right as provided for in the laws of this order have been filed with the supreme secretary and passed upon by the board of directors, nor unless brought within one year from the date of the death of the member,"

—and also that the certificate offered in evidence was but a part of the contract. This motion was denied, defendant excepted, and the trial proceeded.

The special defenses under the notice given under the plea are of great length. The material allegations necessary to be considered may be stated as follows:

*First.* That the beneficiary certificate by its terms included the written application for membership and benefits, the medical examination, and the constitution and by-laws of the order; that statements in the application for membership and medical examination were made warranties and the basis and consideration for

issuing the beneficiary certificate; that the application for membership contained a waiver for the member and her beneficiary of all privilege or benefit disqualifying any physician from testifying concerning information obtained about her in a professional or other capacity, and also the provisions of all laws which would conflict with such agreement.

*Second.* The application and the beneficiary certificate contained agreements that, if the member entered into certain prohibited business, or committed a felony, or within three years took his own life, whether sane or insane, or death was caused by the violation or attempted violation of any laws of the State, territory, or country in which he might be, the certificate would be forfeited.

*Third.* That plaintiff's decedent came to her death by procuring and consenting to an abortion and miscarriage which was performed upon her; she being then pregnant.

In making such defenses counsel for defendant offered in evidence the certificate of death of Grace P. Gilchrist to prove the cause of death. This was a certified copy of the certificate of death which had been filed with the secretary of State, made by the attending physician, required by statute before a burial permit can be issued. This was objected to as incompetent and hearsay, that proof of cause of death cannot be made by a witness who is not sworn and subjected to cross-examination, and it states a fact not within the personal knowledge of the doctor. This certificate contains in all 20 subdivisions. It is necessary to give but the seventeenth:

"(17) I hereby certify that I attended deceased from May 25, 1913, to May 29, 1913; that I last saw her alive on May 29, 1913; and that death occurred on the date stated above, at 10 p. m. The cause of death was as follows: Peritonitis. Duration, five days.

"Contributory. Abortion, said by deceased to have been performed by Dr. ————."

This was signed by the attending physician. We have copied the cause of death from the original return, which differs slightly from the printed record. The objectionable portion was the last sentence. The court sustained the objection excluding the last sentence following the word "peritonitis." To this ruling counsel for defendant took an exception. After some colloquy between the court and counsel for defendant, the certificate of death was withdrawn, counsel stating:

"We would like the record to show that by withdrawing the death certificate offered in evidence we do not waive the right to the exception to the ruling of the court refusing the defendant the admission of the death certificate in evidence to show the cause of death.

*"The Court:* It is understood that you are to have the benefit of an exception to my ruling."

In the trial of a case the withdrawal of evidence offered leaves nothing for the court to pass upon. However, from what we have just quoted, we think it may be fairly understood counsel for defendant did not so understand this withdrawal, and the court was evidently of the same opinion. Therefore we are constrained to consider the error assigned upon this exception in its order.

Defendant next offered in evidence a certified copy of the coroner's verdict for the purpose of showing the cause of death of deceased, and claiming the same was a part of the proof of death voluntarily submitted by plaintiff, and, therefore, an admission on his part of the cause of death. Counsel for plaintiff contended that the record shows this was not furnished voluntarily by plaintiff as part of proof of death, but was afterwards requested by defendant, and objected to its receipt in evidence for the reason that it was incompetent and immaterial. The objection was sustained, and the paper excluded, to which defendant excepted.

On the. part of the defense there was next introduced the testimony of two physicians who attended the deceased during her last sickness, by which witnesses it was ·sought to show that death had been produced by an·abortion, and also to show by .them statements made· by the deceased to each of them relating how the abortion. was caused. The witnesses testified as to the condition of the patient when they attended her and the extent of the examination of her person made by them whereby they obtained knowledge of her physical condition. This testimony is of great length, and for the purposes of this case need not be quoted. The substance of the testimony of both of them was that each found that the patient was suffering from peritonitis, and there was found evidence of a miscarriage or abortion. The examinations were separate, but made on the same day; the second physician being called because the regular physician could not be found. Neither of them knew the cause of the abortion, and from the examination made by each neither could testify what was its cause. Both testified that abortions occurred from diseases and other causes, such as injuries to the person. Each was allowed to testify, over the objection of counsel for plaintiff, that in his opinion this was a "produced abortion." During the taking of the testimony of each of these physicians many exceptions were taken by defendant's counsel to the rulings of the court excluding certain questions. However, the testimony of each culminated in the opinion of each that this was a "produced abortion," which was allowed by the court. Exceptions were also taken on the part of defendant to the rulings of the court in not permitting these witnesses to testify as to statements made by deceased as to how the abortion was produced.

The testimony of the hospital nurse who attended deceased after she was admitted to the hospital was

then offered by defendant. Counsel for defendant offered to show by this witness that she was present when the statement was made by deceased to one of her attending physicians, in answer to his question as to how and where the abortion was produced. This was objected to as incompetent and hearsay. This same testimony offered and objected to on the part of the physicians was put upon the ground that it was part of the *res gestæ.* The objection was sustained, and an exception taken. Thereupon, on the part of defendant, counsel offered in evidence sections 11502 and 11503, 3 Comp. Laws, and rested. Counsel for plaintiff then moved the court to direct a verdict in his behalf, for the reason that defendant had introduced no evidence or made any defense to overcome the *prima facie* case presented by plaintiff.

The errors assigned and relied upon by defendant are based upon the exceptions which have already been noted, and are presented in defendant's brief under seven groups:

*First. Conditions precedent.* Defendant first insists that the court was in error in overruling defendant's motion for a directed verdict because plaintiff had not complied with the provision in the certificate sued upon, and contends:

"That it is a condition precedent to the right of recovery in this case that satisfactory proofs of death must be filed with the company before the right of action on the part of the beneficiary accrues."

As appears in our statement of facts, it was admitted on the part of defendant that these proofs of death and of plaintiff's claim (not admitting that they were satisfactory) were filed in season, received by the proper officers, acted upon, and payment refused. A reading of subdivision *"d"* of Circuit Court Rule 7 clearly shows that:

If the defendant "in a suit upon a policy of insur-

ance, * * * shall rely '* * * upon the failure to furnish any proof of loss, as required by the policy, there shall be added to the plea a notice plainly indicating the facts relied on."

This was a matter of defense to this policy under our practice. Therefore this defense was not open to defendant, because it gave no notice thereof. *O'Neill* v. *Assurance Co.*, 155 Mich. 564 (119 N. W. 911); *Lessnau* v. *Catholic Order of Foresters*, 163 Mich. 111, 119, 121 (128 N. W. 201), and cases cited. The court was therefore not in error.

*Second. Death certificate.* Error is also relied upon because of the ruling of the court in excluding the last sentence in the death certificate. This sentence reads:

"Contributory. Abortion, said by deceased to have been performed by Dr. ————."

The objection was that this was hearsay, and therefore incompetent, and not a proper part of the certificate required by the statute. We are of opinion that the certificate properly included the words "Contributory. Abortion." A fair interpretation of the certificate is that the contributing cause of death was within the knowledge of the physician, and was not hearsay. The remainder of the certificate was hearsay. The proper certificate was admissible under the statute. *Krapp* v. *Insurance Co.*, 143 Mich. 369 (106 N. W. 1107, 114 Am. St. Rep. 651).

*Third. Coroner's verdict.* Defendant contends that the court erred in excluding the coroner's verdict, which was offered in evidence by defendant, and claims that it was admissible as an admission, because it was furnished to defendant by plaintiff as a part of the proofs of death. We do not think the testimony in the case warrants such a conclusion. All of the proofs of death furnished by plaintiff were verified June 6th and forwarded and filed with the defendant June 9th. Plaintiff under the statute was called by defendant

for cross-examination and testified he furnished all proofs of death the local lodge required. The record shows that this was on June 6, 1913. On July 14th following, he procured and sent a copy of the coroner's verdict at the request of defendant. This was not furnished by plaintiff as part of his proofs of death. It was not furnished by him voluntarily and was no admission by him of its contents. *Wasey* v. *Insurance Co.,* 126 Mich. 119 (85 N. W. 459). The court was not in error in excluding it.

*Fourth. Opinions of attending physicians.* As already stated, the facts concerning which the attending physicians testified were obtained by them in their professional capacity while attending deceased as their patient, and, unless this case is an exception to the general rule, such knowledge was privileged. Some of these assignments of error which relate to the exclusion of testimony above described which, under ordinary circumstances would be considered privileged, as having been obtained in a professional capacity, are claimed to have been admissible because of the waiver by deceased of the statutory privilege prohibiting the disclosure by attending physicians of information obtained while acting as such, which waiver was contained in the application of deceased for the beneficiary certificate. Our statute which prohibits a disclosure of such information on the part of a physician was amended by Act No. 234, Pub. Acts 1909, by adding a proviso as follows:

"Provided, that after the decease of such patient, in a contest upon the question of admitting the will of such patient to probate, the heirs at law of such patient, whether proponents or contestants of his will, shall be deemed to be personal representatives of such deceased patient for the purpose of waiving the privilege hereinbefore created."

This amendment to our statute provides but one exception to the prohibition created by the section, and

that is in a contest upon the question of admitting the will of such person to probate where the parties to the contest shall be deemed to be personal representatives of such deceased for the purpose of waiving the privilege thereinbefore created. In New York the code was amended very much as our statute has been, except it provided in terms that such waiver could be made by the personal representatives of the deceased patient only upon a trial or examination. In the case of *Holden* v. *Insurance Co.*, 165 N. Y. 13, 17 (58 N. E. 771), that court, passing upon the question of an express waiver of this kind contained in an application for a life insurance policy, held:

"Under the statute as amended, no one except the personal representatives of the deceased  *  *  * can waive the provisions of section 834, and it can be waived by them only upon the trial or examination where the evidence is offered or received. The apparent purpose of that amendment was to protect parties, their representatives and successors from waivers which should be inadvertently or improperly obtained previously to the trial of an action or examination of the witness," *et seq.*

Our statute creates an absolute privilege, with but one exception, where a waiver may be made by the representatives of the deceased patient, and that only in a contest upon the question of admitting the patient's will to probate. Our statute, therefore, contains the more stringent prohibition, and the patient's waiver of the privilege was of no force or effect. *Holden* v. *Insurance Co.*, *supra.* It has been the policy of the legislature and the courts of this State to protect this privilege. The waiver contained in the application was therefore against public policy and void, and the testimony of the attending physicians as to all knowledge obtained by them in such capacity was properly excluded. This includes all of the testimony of the physicians as to matters which were obtained from

deceased in their professional capacity, together with their opinions based upon such information.

*Fifth. Alleged statements of deceased.* It is contended on the part of defendant that certain alleged statements of deceased made to these physicians and to one of them in the presence of a nurse should have been admitted, claiming they were admissible because of the waiver clause and because they were part of the *res gestæ.* We have already disposed of the contention relative to the waiver clause, and nothing more need be said in that regard, nor do we think they could be regarded as part of the *res gestæ.* The testimony of the nurse was admissible in so far as it stated an admission by the insured of the cause of her ailment. The statute does not exclude the testimony of the nurse. It was the life of the deceased which was insured. Plaintiff, as beneficiary, can recover only according to the contract which she made with defendant. If she admitted a breach of it which would avoid it, he ought not to recover.

*Sixth. Expert testimony.* Errors assigned under this subdivision of defendant's brief are already disposed of by what has been said in this opinion relative to the waiver of deceased of her statutory privilege and the exclusion of alleged statements of deceased.

*Seventh. Direction of verdict for plaintiff.* As has been indicated, we are of opinion that there was some testimony within the notice of the defenses relied upon tending to prove that the policy was avoided. It follows that the court was in error in granting the motion of plaintiff and directing a verdict in his behalf.

The judgment of the circuit court is therefore reversed, and a new trial granted.

BROOKE, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.