SEATON v STATE FARM LIFE INSURANCE COMPANY

Docket No. 44849. Submitted May 12, 1980, at Lansing.—Decided August 27, 1980. Leave to appeal applied for.

Cheryl Seaton brought suit against State Farm Life Insurance Company to recover life insurance proceeds, which action resulted in a verdict for the defendant which was reversed on appeal and remanded for a new trial, 75 Mich App 252 (1977). The second trial resulted in a verdict for the plaintiff, Ingham Circuit Court, James R. Giddings, J. Defendant appeals, alleging that the trial court erred in allowing the plaintiff to reassert the physician-patient privilege in the second trial, after waiving it in the first, and in preventing the defendant from commenting on the plaintiff's assertion of the privilege. *Held:*

1. The trial court did not err in permitting the taking and reading into the record of the deposition of a doctor who had regularly treated plaintiff's husband only as to matters not within the scope of the physician-patient privilege, even though the plaintiff had waived the privilege during the first trial of the same issues.

2. The trial court erred in preventing the defendant from commenting on the plaintiff's assertion of the physician-patient privilege, but the error was harmless since the jury was aware of the existence of the attending physician, and defense counsel implied that this physician informed plaintiff's deceased husband of the nature of his condition.

Affirmed.

1. EVIDENCE — PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — STATUTES.

The statutory physician-patient privilege may be reasserted by a party in a second trial where it deals with the same issue as raised in the first trial, although the party asserting the privi-

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 81 Am Jur 2d, Witnesses § 281.
[2] 81 Am Jur 2d, Witnesses § 277.
[4, 5] 81 Am Jur 2d, Witnesses § 269.
[6] 75 Am Jur 2d, Trial § 248.

lege waived it during the first trial (MCL 600.2157; MSA 27A.2157).

2. EVIDENCE — PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — INTRODUCTION OF EVIDENCE.

A party asserting the physician-patient privilege has the right to control the introduction of the privileged information into evidence, even where the information has been divulged earlier.

3. EVIDENCE — PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — PUBLICATION.

Publication of confidential information by a party does not waive the privilege attached to the relation of a physician and patient at a subsequent trial.

4. EVIDENCE — PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — WAIVER.

The signing of a waiver of the physician-patient privilege by a party when applying for a life insurance policy does not waive the privilege at a subsequent trial.

5. EVIDENCE — PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — CONTRACTUAL WAIVER.

A contractual waiver of the physician-patient privilege contained in an application for life insurance is against public policy and void, and the testimony of attending physicians as to all knowledge obtained by them within the privileged areas is inadmissible.

6. EVIDENCE — PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — ERROR.

Reasonable comment by an adverse party on the invocation by his opponent of the physician-patient privilege is permitted where its use is to gain strategic advantage over an opponent and accomplishes nothing pertinent to the purpose for which it was created, and foreclosure of such comment constitutes error.

*H. Eugene Bennett,* for plaintiff.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Everette R. Trebilcock* and *Robert W. Townsend),* for defendant.

Before: D. F. WALSH, P.J., and BASHARA and K. B. GLASER,* JJ.

BASHARA, J. This Court previously reversed and remanded for a new trial defendant's jury verdict of no cause of action in plaintiff's suit to recover life insurance proceeds. *Seaton v State Farm Life Ins Co,* 75 Mich App 252; 254 NW2d 858 (1977). While the facts of the instant case are adequately set forth in our previous opinion, we note that, at retrial, the lower court, upon plaintiff's motion, limited Dr. Collins' testimony to those matters not privileged under MCL 600.2157; MSA 27A.2157. Therefore, Dr. Collins' statement that he advised plaintiff's husband of his cancerous condition in 1968 was not admitted at retrial. In addition, defendant was precluded from commenting upon plaintiff's assertion of the physician-patient privilege. At the close of the second trial, the jury was instructed, *inter alia,* on damages for mental anguish and returned a verdict of $28,000 for plaintiff. Defendant appeals as of right.

Defendant raises several issues for this Court's consideration, only two of which merit discussion. First, did the trial court err in permitting the deposition of Dr. Collins to be taken and read into the record, but only as to matters not privileged under MCL 600.2157; MSA 27A.2157? That statute provides:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, however, That in case such patient

---

* Circuit judge, sitting on the Court of Appeals by assignment.

shall bring an action against any defendant to recover for any personal injuries, or for any malpractice, if such plaintiff shall produce any physician as a witness in his own behalf, who has treated him for such injury, or for any disease or condition, with reference to which such malpractice is alleged, he shall be deemed to have waived the privilege hereinbefore provided for, as to any or all physicians, who may have treated him for such injuries, disease or condition: Provided further, That after the decease of such patient, in a contest upon the question of admitting the will of such patient to probate, the heirs at law of such patient, whether proponents or contestants of his will, shall be deemed to be personal representatives of such deceased patient for the purpose of waiving the privilege hereinbefore created."

Since plaintiff waived the privilege during the first trial, the question becomes whether a party can reassert the privilege dealing with the same issue during the second trial. We answer in the affirmative. In *Briesenmeister v The Supreme Lodge Knights of Pythias of the World,* 81 Mich 525; 45 NW 977 (1890), our Supreme Court had before it a similar statute and concluded that a party asserting the privilege had the right to control the introduction of the privileged information into evidence, even where the information had been divulged earlier. The Court cited with approval *Grattan v The Metropolitan Life Ins Co of NY,* 92 NY 274; 44 Am Rpts 372 (1883), which held that where a party had waived the privilege at one trial, it did not preclude assertion of the privilege at a second trial. In addition, this Court recently cited *Briesenmeister* with approval in *Beasley v Grand Trunk W R Co,* 90 Mich App 576, 597-598; 282 NW2d 401 (1979). See also *Polish Roman Catholic Union of America v Palen,* 302 Mich 557; 5 NW2d 463 (1942), repudiating the

theory that once confidential information has been published, the privilege has been waived, and *Cartwright v Maccabees Mutual Life Ins Co,* 65 Mich App 670, 680; 238 NW2d 368 (1975), *rev'd on other grounds* 398 Mich 238; 247 NW2d 298 (1976), holding that the signing of a waiver of the physician-patient privilege when applying for a life insurance policy does not waive the privilege at a subsequent trial.

Appellant also argues that plaintiff's assertion of the medical privilege was foreclosed in light of the contractual waiver of the insured contained in his application for life insurance. We disagree. *Gilchrist v Mystic Workers of the World,* 188 Mich 466; 154 NW 575 (1915), and its progeny have held that a contractual waiver of the medical privilege contained in the application for life insurance is against public policy and void, and the testimony of the attending physicians as to all knowledge obtained by them within the privileged area is inadmissible. See *Wohlfeil v Bankers Life Co,* 296 Mich 310; 296 NW 269 (1941), and *Cartwright, supra.*

We are also asked to determine whether the trial court erred in preventing the defendant from commenting on the plaintiff's assertion of the physician-patient privilege.

There appears to be no Michigan authority directly on point. *Degroff v Clark,* 358 Mich 274; 100 NW2d 214 (1960), and *Magda v Johns,* 374 Mich 14; 130 NW2d 902 (1964), indicate that the court and the adverse party are precluded from commenting on the assertion of the privilege or on the failure of the physician to testify. However, both of those cases were automobile negligence actions. The Court's reasoning was that plaintiff's privilege was statutorily waived, MCL 600.2157; MSA

27A.2157, GCR 1963, 311.2(2), and that the physician-witness was available to either party.

Two Minnesota cases appear to be extremely helpful in the resolution of the problem. *Nelson v Ackerman,* 249 Minn 582, 597-598; 83 NW2d 500 (1957), held that where the physician-patient privilege was asserted by a party seeking damages for personal injury, and the nature and extent of the injuries were involved, it was not error for the one asserting the privilege to do so in the presence of the jury. However, the Court went on to fashion its reasoning for allowing comment on the assertion of the privilege by the adverse party:

"*  *  * As far as the statute gives him a right to close the mouth of the doctor we cannot interfere. And as long as the privilege is asserted for the purpose for which it was created, it should be given full respect. But when it is asserted for the sole purpose of gaining a strategic advantage over an opponent and accomplishes nothing pertinent to the purpose for which it was created, it should not be further extended by judicial decision. If it is so used, it is only fair that the jury be permitted to know who was responsible for keeping out the evidence most likely to establish the truth. The blame, in that case, should be put where it belongs, not left so that the jury can, perchance, accuse the wrong party of failing to call the doctor. We therefore now hold that, when a physician-patient privilege is asserted by a party to an action seeking recovery for personal injuries and the nature and extent of the injuries are involved, it is not error to require the one asserting the privilege to do so in the presence of the jury or to permit fair comment by the adverse party on his inability to examine such attending physician concerning his examination and treatment of the patient."

In *Stanger v Gordon,* 309 Minn 215; 244 NW2d 628 (1976), the Court stated that where the privilege was asserted for the purpose for which it was

created, it should be given full respect. *Sanne v Metropolitan Life Ins Co,* 218 Minn 181; 15 NW2d 524 (1944), which allowed a cautionary instruction regarding plaintiff's claim of physician-patient privilege, was cited with approval. In commenting on *Nelson, supra,* the Court concurred in its holding, but held that it was error to permit plaintiff's counsel to be *repeatedly* required to invoke the privilege.

Therefore, the Minnesota Courts seem to be in agreement that reasonable comment on the invocation of the physician-patient privilege is permitted where its use is to gain "* * * strategic advantage over an opponent and accomplishes nothing pertinent to the purpose for which it was created * * *". *Nelson, supra,* 597.

It should be noted that as in the previously cited Michigan cases of *Degroff, supra,* and *Magda, supra,* personal injury actions were involved. However, Minnesota does not have a statute waiving the privilege, as does Michigan.

We concur in the foregoing reasoning and adopt the Minnesota rationale. Having done so, we must resolve whether the trial judge's ruling in the instant case constituted reversible error.

The record reflects that the portion of Dr. Collins' testimony placed before the jury indicated he was the regular physician of the deceased, Duncan James Seaton. He attended Mr. Seaton in the hospital from August 2, 1968, to August 20, 1968. The decedent had office appointments with Dr. Collins in June and December of 1969, and in January of 1972.

Defense counsel avoided mention of the invocation of the privilege. However, the tenor of his remarks at closing argument leaves the impression that the decedent had cancer at the time the

policy was issued. There is also a definite suggestion that the attending physician told Mr. Seaton, or somebody in his family, of the seriousness of the matter. The following remarks from closing argument bear out this premise:

"Now, in 1968 we have to conclude on the status of the evidence here that it was unknown to anybody that Mr. Seaton had a malignant tumor, to the pathologist, to the treating physicians, to the general surgeon who did the operation, because to say otherwise is to say that maybe somebody knew it but didn't tell him a cancer of the intestines, probably metastasized or spread as rapidly as any nature. It is also commonly known to reoccur, frankly, on a reoccurring basis, so you have to conclude that Dr. Collins, in treating Mr. Seaton, made a conscious decision and, by the way, as Past President of the Medical Association for the State of Kansas, that he wasn't gonna tell him. He may have made that decision on the basis that Jim Seaton couldn't handle it, and he didn't tell Jim Seaton; but he wouldn't secrete it from everybody if that was his decision. He wouldn't secrete it from James Seaton's family, either in Lansing, or his wife. I think there's only one reasonable conclusion to make, and that is that Jim Seaton knew it then, he had a hard decision to make, what am I going to do, what personal choice in my life am I going to make at this point in time."

The trial judge indicated, in his instructions to the jury, that it was the defendant's theory that the information given them by the decedent, Duncan James Seaton, was false because Mr. Seaton knew, or should have known, of his cancerous condition at the time he applied for insurance.

It, thus, appears that even though the jury was not instructed that plaintiff had invoked the physician-patient privilege, they were aware that Dr. Collins was the attending physician. They were also told by defense counsel that Dr. Collins must

have informed someone of decedent's cancerous condition. Defense counsel clearly implied that that "someone" must have been the decedent himself.

We are led to the conclusion that failure to comment on the invocation of the privilege amounted to harmless error in view of the foregoing.

Affirmed, no costs.