HERALD COMPANY, INC v ANN ARBOR PUBLIC SCHOOLS

Docket No. 186193. Submitted December 3, 1996, at Detroit. Decided June 20, 1997, at 9:10 A.M.

The Herald Company, Inc., brought an action in the Washtenaw Circuit Court against the Ann Arbor Public Schools, seeking, pursuant to the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, the disclosure of certain documents and records maintained by the defendant and relating to Ernest Day Gillum, a teacher who had pleaded guilty of carrying a concealed weapon. The action followed the defendant's disclosure of some of the material the plaintiff had requested under the FOIA and refusal to disclose the remainder. Gillum was allowed to intervene as a defendant in the action. The court, Patrick J. Conlin, J., ordered the disclosure of some of the material sought but denied the request for disclosure of the remainder. Gillum appealed from the order and the plaintiff cross appealed from the order. After the court entered its order, it denied Gillum's request for a stay of disclosure pending appeal. The Court of Appeals, NEFF, P.J., and HOEKSTRA, J. (MARKEY, J., dissenting), entered an unpublished order on September 11, 1995 (Docket No. 186193), granting Gillum's motion for a stay. The Court of Appeals, NEFF, P.J., and HOEKSTRA and MARKEY, JJ., granted the plaintiff's motion to lift the stay in an unpublished order entered May 9, 1996 (Docket No. 186193).

The Court of Appeals *held*:

1. Gillum's arguments that his performance evaluations and disciplinary records fall within certain exemptions from disclosure under the FOIA and that the trial court erred in ordering the partial disclosure of a memorandum written by Jane Johnson, a school administrator, are moot. The material was disclosed following the granting of the plaintiff's motion to lift the stay ordered by the Court of Appeals. When the disclosure that a suit seeks has already been made, the substance of the controversy disappears and becomes moot.

2. The circuit court erred in exempting the unredacted Johnson memorandum from disclosure to the extent that the court relied on the "privacy" and "intra-agency" exemptions of the FOIA, MCL 15.243(1)(a),(n); MSA 4.1801(13)(1)(a),(n). To the extent that the

court held that the memorandum was of a personal nature, the court was correct. The court was incorrect, however, to the extent that it held that the disclosure of this information would constitute a clearly unwarranted invasion of privacy. The public interest in disclosure was not clearly outweighed by the public interest in encouraging frank communications within a public body. The court abused its discretion to the extent that it relied on the intra-agency exemption in not requiring disclosure of the Johnson memorandum.

3. The trial court abused its discretion in applying the physician-patient privilege, MCL 600.2157; MSA 27A.2157, to exempt from disclosure under MCL 15.243(1)(i); MSA 4.1801(13)(1)(i) the attendance records that the school created itself because they do not contain information that a physician acquired while attending Gillum in a professional character. The trial court did not abuse its discretion in applying the physician-patient privilege exception to certain attendance records that Gillum submitted to the school that do constitute medical records. The matter must be remanded to allow the trial court to determine which of the records submitted by Gillum constitute medical records exempt from disclosure.

4. The trial court abused its discretion in not ordering disclosure of certain redacted attendance records created by the school itself. Some of the attendance records submitted by Gillum contain medical and psychological facts about Gillum and may be exempt from disclosure under MCL 15.243(1)(m); MSA 4.1801(13)(1)(m). The matter must be remanded for a determination by the trial court regarding which of Gillum's attendance records are exempt from disclosure under § 13(1)(m).

5. The matter must be remanded for more particularized findings of fact regarding the request for disclosure of complaint letters sent to the school by parents.

6. The attorney-client privilege does not apply to the tape recording of an interview between the school district, Gillum, and the school district's attorney that was adversarial and had a stated purpose of getting Gillum's version of events, not to address how the school was going to defend itself against a potential lawsuit. The court's determination that the tape of the interview fell within the attorney-client privilege exemption from disclosure, MCL 15.243(1)(h); MSA 4.1801(13)(1)(h), must be reversed and the matter must be remanded for a determination whether the tape fell within the "intra-agency" or "privacy" exemptions, § 13(1)(a),(n).

Reversed in part and remanded.

1. RECORDS — FREEDOM OF INFORMATION ACT — ACTIONS — MOOT CONTROVERSIES.

Once a document that is the subject of a suit under the Freedom of Information Act has been disclosed, the substance of the controversy disappears and becomes moot (MCL 15.231 *et seq.*; MSA 4.1801[1] *et seq.*).

2. RECORDS — FREEDOM OF INFORMATION ACT — PRIVACY EXEMPTION.

The privacy exemption from disclosure under the Freedom of Information Act allows a public body to conceal public records containing information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy; the customs, mores, or ordinary views of the community must be taken into account in determining whether the information is of a personal nature; "personal" means of or pertaining to a particular person, private, one's own, and concerns a particular individual and the individual's intimate affairs, interests, or activities (MCL 15.243[1][a]; MSA 4.1801[13][1][a]).

3. RECORDS — FREEDOM OF INFORMATION ACT — PRIVACY EXEMPTION — COMMON-LAW RIGHT TO PRIVACY.

Information whose disclosure under the Freedom of Information Act is sought to be prevented on the basis that it would constitute a clearly unwarranted invasion of privacy under the common-law privacy right to prevent public disclosure of embarrassing private facts must be highly offensive to a reasonable person and of no legitimate concern to the public (MCL 15.243[1][a]; MSA 4.1801[13][1][a]).

4. RECORDS — FREEDOM OF INFORMATION ACT— DISCLOSURE.

A public body may exempt from disclosure, as a public record, communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action, upon a showing that the public interest in encouraging frank communications between officials and employees of public bodies clearly outweighs the public interest in disclosure (MCL 15.243[1][n]; MSA 4.1801[13][1][n]).

5. RECORDS — FREEDOM OF INFORMATION ACT.

A trial court may justify an exemption from disclosure under the Freedom of Information Act with respect to a class of documents, but any category must be clearly described and drawn with sufficient precision so that all documents within a particular category are similar in nature; the act imposes a duty to segregate, to the extent practicable, exempt material from disclosable nonexempt material (MCL 15.231 *et seq.*; MSA 4.1801 *et seq.*).

6. RECORDS — FREEDOM OF INFORMATION ACT — PHYSICIAN-PATIENT PRIVILEGE
   — WAIVER.

 The fact that an employee may have waived the physician-patient
privilege when the employee submitted to his employer certain
attendance records that contained medical records does not mean
that the employee has waived the privilege with regard to other
parties who request disclosure of the records under the Freedom
of Information Act (MCL 15.231 *et seq.*; MSA 4.1801 *et seq.*).

7. RECORDS — FREEDOM OF INFORMATION ACT — ATTORNEY-CLIENT PRIVILEGE.

 The Freedom of Information Act excludes from disclosure informa-
tion or records subject to the attorney-client privilege; the privilege
attaches to confidential communications made by a client to an
attorney acting as the client's legal adviser and made for the pur-
pose of obtaining legal advice (MCL 15.243[1][h]; MSA
4.1801[13][1][h]).

*Dykema Gossett PLLC* (by *Jonathan D. Rowe, Bradley L. Smith,* and *Steven Marchese*), for the plaintiff.

*White, Przybylowicz, Schneider & Baird, P.C.* (by *Thomas A. Baird* and *Douglas V. Wilcox*), for Ernest Day Gillum.

Before: MACKENZIE, P.J., and WAHLS and MARKEY, JJ.

WAHLS, J. In this action involving the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, plaintiff The Herald Company, Inc., sought disclosure of records pertaining to intervenor Ernest Gillum and maintained by defendant Ann Arbor Public Schools. The trial court ordered disclosure of some records, but prevented disclosure of other records. Gillum appeals as of right and plaintiff cross appeals as of right from this order. We reverse in part and remand for further proceedings.

According to defendant, plaintiff's interest in information about Gillum came after Gillum pleaded guilty of carrying a concealed weapon. Plaintiff made an

FOIA request to defendant on February 5, 1995, seeking disclosure of various records involving Gillum. Around the same time, Gillum offered to resign his teaching position if permitted to take sick leave until November 10, 1995, an offer that defendant accepted. Defendant granted certain portions of plaintiff's request, but refused to disclose Gillum's performance evaluations, Gillum's disciplinary records, Gillum's attendance records, certain complaint letters about Gillum, a tape-recorded interview of Gillum, and an unredacted memorandum dated January 18, 1995, that was written by Jane Johnson, a school administrator.

On April 5, 1995, plaintiff filed this complaint regarding each part of its FOIA request that was denied and moved to compel production. Following an in camera review, the circuit court ordered disclosure of the performance evaluations and disciplinary records, without identification of the evaluators. However, the court ordered that the other records remain undisclosed.

I

Gillum argues on appeal that his performance evaluations and disciplinary records fell within the "privacy," "other statute," and "intra-agency" exemptions of the FOIA. Defendant argues on cross appeal that these records did not fall within these exemptions. This issue is moot.

After the circuit court ruled against Gillum with regard to these records, it denied Gillum's request for a stay of disclosure pending appeal. Although this Court initially granted a stay, it later granted plaintiff's motion to lift the stay. When the disclosure that a suit seeks has already been made, the substance of

the controversy disappears and becomes moot. *Dens-more v Dep't of Corrections*, 203 Mich App 363, 366; 512 NW2d 72 (1994); *Traverse City Record Eagle v Traverse City Area Public Schools*, 184 Mich App 609, 610; 459 NW2d 28 (1990). Similarly, Gillum's argument that the circuit court erred in ordering partial disclosure of the Johnson memorandum is moot. *Dens-more, supra*, p 366; *Record Eagle, supra*, p 610.

## II

On cross appeal, plaintiff argues that the circuit court erred in exempting the unredacted Jane Johnson memorandum from disclosure. We agree to the extent that the circuit court relied on the "privacy" and "intra-agency" exemptions.

We review de novo the trial court's rulings regarding questions of law in declaratory judgment actions. *Lansing Ass'n of School Administrators v Lansing School Dist Bd of Ed*, 216 Mich App 79, 84; 549 NW2d 15 (1996), aff'd in part and remanded 455 Mich 285; 565 NW2d 650 (1997) (hereinafter *LASA*). However, we review a decision whether to disclose exempted information for an abuse of discretion. *LASA, supra*, 216 Mich App 84-85. When a public body refuses to disclose a requested document under the act, the public body bears the burden of proving that the refusal was justified under the act. *Nicita v Detroit (After Remand)*, 216 Mich App 746, 751; 550 NW2d 269 (1996).

The FOIA protects a citizen's right to examine and to participate in the political process. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 231; 507 NW2d 422 (1993); *Nicita, supra*, p 751. A policy of full disclosure underlies the FOIA. *Booth,*

*supra,* p 231; *Nicita, supra,* p 751. All public records are subject to full disclosure unless the material is specifically exempted under § 13 of the FOIA, MCL 15.243; MSA 4.1801(13). *Nicita, supra,* p 751. The exemptions to disclosure must be narrowly construed. *Booth, supra,* p 232; *Nicita, supra,* p 751.

Here, the trial court stated that defendant was not required to disclose this memorandum because it was "one of unsubstantiated, unsolicited, and unverified remarks in the form of 'observations.' " To the extent that this remark indicates that the trial court relied on § 13(1)(a) of the FOIA (the privacy exemption) in asserting that Jane Johnson's memorandum was exempt from disclosure, the court abused its discretion. The privacy exemption allows a public body to conceal public records containing "[i]nformation of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." MCL 15.243(1)(a); MSA 4.1801(13)(1)(a); *Booth, supra,* p 232. The trial court's reliance on the fact that the remarks in the memorandum were "unsubstantiated, unsolicited, and unverified remarks in the form of 'observations' " applied an incorrect legal standard. Rather, two factors must exist to exempt information under this provision: (1) the information sought must be of a "personal nature," and (2) the disclosure of such information must constitute a "clearly unwarranted" invasion of privacy. *Booth, supra,* p 232.

In determining whether the information withheld is of a "personal nature," " 'the customs, mores, or ordinary views of the community' " must be taken into account. *Id.,* pp 232-233, quoting *Swickard v Wayne Co Medical Examiner,* 438 Mich 536, 547; 475 NW2d

304 (1991). The Supreme Court has defined "personal" as " '[o]f or pertaining to a particular person; private; one's own . . . . Concerning a particular individual and his intimate affairs, interests, or activities; intimate . . . .' " *Swickard, supra,* p 547 (citation omitted). Here, Johnson's memorandum contains personal information about Gillum and his family, quotations from and about him, as well as observations of his conduct. To the extent that the circuit court held that the Johnson memorandum was of a personal nature, we agree. Compare *Booth, supra,* p 233 (travel expense records); *Nicita, supra,* p 752 (business records).

We disagree with the circuit court to the extent that it held that the disclosure of this information would constitute a "clearly unwarranted" invasion of privacy. As in *Swickard, supra,* p 549, the common-law privacy right that would be threatened by disclosure is the public disclosure of embarrassing private facts. This tort requires that the disclosed information be highly offensive to a reasonable person and of no legitimate concern to the public. *Id.* Here, the memorandum discussed Gillum's professional performance as a teacher and in the classroom, an issue of legitimate concern to the public. See *id.,* p 558 (circumstances surrounding the alleged suicide of a public figure are matters of legitimate public concern). Accordingly, construing the "privacy" exemption of the FOIA narrowly, *Booth, supra,* p 232, disclosure of this memorandum would not constitute a "clearly unwarranted" invasion of privacy. *LASA, supra,* 216 Mich App 89.

Gillum argues that defendant was not required to disclose this memorandum under the "intra-agency"

exemption, MCL 15.243(1)(n); MSA 4.1801(13)(1)(n). This subsection exempts from disclosure "[c]ommunications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action." *Id.*; *Milford v Gilb*, 148 Mich App 778, 782; 384 NW2d 786 (1985). In order to prevent disclosure under this subsection, the public body must first establish that (a) the documents cover other than purely factual materials and (b) the documents are preliminary to a final determination of policy or action. *Id.*, pp 782-783. If the documents meet this substantive test, however, the public body must also establish that the public interest in encouraging frank communications within the public body or between public bodies clearly outweighs the public interest in disclosure. *Id.*, p 783.

It is the intent of the FOIA to deter efforts of agency officials to prevent disclosure of mistakes and irregularities committed by them or the agency and to prevent needless denials of information. *Schinzel v Wilkerson*, 110 Mich App 600, 604; 313 NW2d 167 (1981). Here, assuming arguendo that this memorandum covers other than purely factual materials and is preliminary to a final determination of policy or action, there is a significant public interest in disclosing a memorandum that contains public observations of a teacher who has been convicted of carrying a concealed weapon. See *Milford, supra,* p 784; compare *Favors v Dep't of Corrections*, 192 Mich App 131, 136; 480 NW2d 604 (1991). Construing the "intra-agency" exemption narrowly, *Booth, supra,* p 232, this public interest in disclosure was not clearly outweighed by

the public interest in encouraging frank communications within a public body. To the extent that the circuit court relied on the intra-agency exemption in not requiring disclosure of the Johnson memorandum, it abused its discretion.

### III

Plaintiff argues that the circuit court abused its discretion in ruling that Gillum's attendance records were subject to the "physician-patient privilege" and the "medical, counseling, and psychological facts" exemptions. We agree in part.

As an initial matter, we note that, although a trial court may justify an exemption with respect to a class of documents, any category must be clearly described and drawn with sufficient precision so that all documents within a particular category are similar in nature. *Newark Morning Ledger Co v Saginaw Co Sheriff*, 204 Mich App 215, 225-226; 514 NW2d 213 (1994). In addition, the FOIA imposes a duty to segregate, to the extent practicable, exempt material from disclosable nonexempt material. *Hubka v Pennfield Twp*, 197 Mich App 117, 120; 494 NW2d 800 (1992), rev'd on other grounds 443 Mich 864 (1993). Because the attendance records that defendant created itself are of a different nature than the attendance records that Gillum submitted to defendant, we treat the two categories of records separately.

### A

The FOIA exempts "[i]nformation or records subject to the physician-patient privilege . . . ." MCL 15.243(1)(i); MSA 4.1801(13)(1)(i). The physician-patient privilege provides, in part:

> Except as otherwise provided by law, a person duly
> authorized to practice medicine or surgery shall not dis-
> close any information that the person has acquired in
> attending a patient in a professional character, if the infor-
> mation was necessary to enable the person to prescribe for
> the patient as a physician, or to do any act for the patient
> as a surgeon. [MCL 600.2157; MSA 27A.2157.]

The purpose of the privilege is to protect the doctor-
patient relationship and ensure that communications
between the two are confidential. *Swickard, supra,*
pp 560-561. The privilege was not recognized at com-
mon law, and therefore, the statute controls the
scope of the privilege in Michigan. *Scott v Henry
Ford Hosp*, 199 Mich App 241, 243; 501 NW2d 259
(1993). The privilege belongs to the patient and can
be waived only by the patient. *Id.*

Here, the records that defendant created about Gil-
lum's attendance do not contain any information that
a physician acquired while attending Gillum in a pro-
fessional character. See, generally, MCL 600.2157;
MSA 27A.2157. Accordingly, the trial court abused its
discretion in applying the physician-patient privilege
to these documents.

On the other hand, it is clear that some of the
records that Gillum submitted to defendant are medi-
cal records that would ordinarily fall within the ambit
of the privilege. See *Popp v Crittenton Hosp*, 181
Mich App 662; 449 NW2d 678 (1989). The purpose of
providing for waiver of this privilege, which is to pre-
vent the suppression of evidence, see *Domako v
Rowe*, 438 Mich 347, 354-355; 475 NW2d 30 (1991), is
not implicated under the facts of this case. In addi-
tion, the fact that Gillum may have waived his privi-
lege regarding these records with regard to defendant

does not mean that he waived the privilege with regard to other parties. See *Polish Roman Catholic Union of America v Palen*, 302 Mich 557; 5 NW2d 463 (1942) (repudiating the theory that once confidential information has been published, the privilege of objecting to its repetition has been waived); *Beasley v Grand Trunk W R Co*, 90 Mich App 576, 596-597; 282 NW2d 401 (1979); see also *McDonnell v United States*, 4 F3d 1227, 1253-1254 (CA 3, 1993); compare *Dobronski v Federal Communications Comm*, 17 F3d 275, 279 (CA 9, 1994). Accordingly, the trial court did not abuse its discretion in applying the physician-patient privilege exception to those records that Gillum submitted to defendant that constitute medical records. Because the trial court did not make particularized findings regarding which of Gillum's attendance records constituted medical records, we remand for that purpose. *Newark Morning Ledger, supra*, pp 225-226; *Hubka, supra*, 197 Mich App 120.

B

The FOIA also exempts "[m]edical, counseling, or psychological facts or evaluations concerning an individual if the individual's identity would be revealed by a disclosure of those facts or evaluation." MCL 15.243(1)(m); MSA 4.1801(13)(1)(m). With regard to the records that defendant itself created, the only aspect of these records that would possibly fall within this exemption are notations next to some entries that read "FAMILL" or "PERSILL." Plaintiff has indicated that it would accept "shell" attendance records without these notations. The trial court abused its discretion in not ordering disclosure of

such redacted records. See *Hubka, supra,* 197 Mich App 120.

On the other hand, some of the attendance records that Gillum submitted to defendant contain medical and psychological facts about Gillum. Accordingly, we remand for more particularized findings regarding which of Gillum's attendance records are disclosable under this exemption and which are not. *Newark Morning Ledger, supra,* pp 225-226; *Hubka, supra,* 197 Mich App 120.

C

Gillum argues that his attendance records fall under the "privacy" exemption. However, because the circuit court did not address this issue, it is not preserved for appellate review. *People v Connor,* 209 Mich App 419, 422; 531 NW2d 734 (1995).

IV

Plaintiff argues that the circuit court abused its discretion in not ordering disclosure of complaint letters of parents. In its decision, the circuit court simply cited a case that it admitted was not on point. The court did not identify the exemption or exemptions on which it relied. Accordingly, we remand for more particularized findings of fact. See *Post-Newsweek Stations v Detroit,* 179 Mich App 331, 335-336; 445 NW2d 529 (1989). We note that the complaint letters derive from various sources. We urge the circuit court on remand, in making its determination, to draw categories with sufficient precision so that all documents within a particular category are similar in nature. See *Newark Morning Ledger, supra,* pp 225-226.

V

Plaintiff argues that the circuit court abused its discretion in not ordering disclosure of the tape recording of an interview between the school district, Gillum, and the school district's attorney. We agree that this recording did not fall within the attorney-client privilege exemption.

The FOIA excludes from disclosure "[i]nformation or records subject to the attorney-client privilege." MCL 15.243(1)(h); MSA 4.1801(13)(1)(h). The attorney-client privilege attaches to communications made by a client to an attorney acting as a legal adviser and made for the purpose of obtaining legal advice. *Taylor v Blue Cross & Blue Shield of Michigan*, 205 Mich App 644, 654; 517 NW2d 864 (1994). The purpose of the privilege is to enable a client to confide in an attorney, secure in the knowledge that the communication will not be disclosed. *Fruehauf Trailer Corp v Hagelthorn*, 208 Mich App 447, 449; 528 NW2d 778 (1995). The scope of the privilege is narrow: it attaches only to confidential communications by the client to its advisor that are made for the purpose of obtaining legal advice. *Id.*, p 450.

Here, the interview was adversarial. Its stated purpose was to get Gillum's version of events, not to address how the school was going to defend itself against a potential lawsuit. Accordingly, the attorney-client privilege did not apply. *Id.* We reverse the trial court's determination that the tape of this interview fell within the attorney-client privilege exemption and remand for the trial court to determine whether the tape fell within the "intra-agency" or "privacy" exemptions.

Reversed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs are awarded pursuant to MCR 7.219, because no party prevailed in full.